UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF COLUMMBIA

| | | |
|---|---|---|
| IN RE MELBEN, INC. | ) | Docket Number 24-00232-ELG |
| | ) | Chapter 11 (Subchapter V) |
| Debtor in Possession | ) | |

# PLAN OF REORGANIZATION

The Debtor proposes the following Plan of Reorganization (the "Plan") pursuant to Subchapter V of Chapter 11 of Title 11 of the United States Code (the "Code"):

## ARTICLE I – DEFINITIONS

The terms defined below shall have the following meanings:

1.01 "Administrative Claim" means a Claim that has been allowed with administrative priority under § 503 of the Code.

1.02 "Allowed Claim" means a Claim:

(a) If no objection to the allowance has been made within any applicable period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan: (i) in the amount for which either a proof of claim has been filed with the Court within the applicable period of limitation fixed by Fed. R. Bankr. P. 3003, the Rules, or an order of the Court; or (ii) in the amount scheduled in the list of creditors prepared and filed with the Court pursuant to Fed. R. Bankr. P. 1007(b), as such may be amended pursuant to Fed. R. Bankr.P. 1009 prior to the Confirmation Date, and not listed therein as disputed, contingent, or unliquidated.

(b) If an objection to the allowance thereof has been interposed, within any applicable period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan, in the amount determined by the Court by a Final Order allowing the Claim.

1.03 "Allowed Secured Claim" means an Allowed Claim that is secured by a lien on property in which the Debtor's estate has an interest, to the extent of the value of such property that is available to such claimant.

1.04 "Allowed Unsecured Claim" means an Allowed Claim to the extent that it is not an Allowed Secured Claim.

1.05 "Applicable Rate" means the interest rate as established in the Order on Motion to determine which will be applied to amortize any Allowed Secured Claim.

1.06 "Avoidance Action" means any Causes of Action arising under Bankruptcy Code

sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in Creditors any and all rights to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

1.07 "Budget" shall mean the Debtor's Budget attached as Exhibit 1-5.[1]

1.08 "Business Day" means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

1.09 "Cash Collateral Order" shall mean any order granted incident to the Debtor's Motion for Order Authorizing Use of Cash Collateral, Providing Adequate Protection, and 363 [Docket Entry No. 58] any other order entered (subsequent to the date of this Plan) incident to such motion.

1.10 "Causes of Action" means any and all Claims, demands, rights, actions, causes of action and suits of the Debtor and the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, whether or not previously reduced to judgment by the Debtor, including but not limited to (1) rights of setoff, counterclaim or recoupment, and Claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims or interests; (3) Claims pursuant to section 362 of the Bankruptcy Code; (4) such Claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) Claims for tax refunds; (7) Claims pursuant to section 510 of the Bankruptcy Code, and (8) Section 506(c) Claims; and (9) any other Claims which may be asserted against third parties.

1.11 "Claim" means any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor that existed on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.12 "Confirmation Date" means the last date upon which the order of confirmation has been both entered by the Court and docketed by the Clerk.

1.12 "Court" means the U.S. Bankruptcy Court for the District of Columbia.

1.14 "Creditor" means a person holding a claim.

1.15 "Disputed Claim" shall have the meaning set forth in Article XIV of this Plan, and shall also include (without limitation) the claim(s) of:

---

[1] Exhibit 1 represents the Debtor income and expense projections for 2025, Exhibit 2 represents this information for 2026, Exhibit 3 represents this information for 2027, Exhibit 4 represents this information for 2028, and Exhibit 5 represents this information for 2029.

(a) Macomb Properties, Inc. (as set forth in its Proof of Claim)

(b) Jaris Fund, LP – but only to the extent that Jaris Fund LP claims to hold a secured claim and then to the extent that the existence of any secured claim held by Jaris Fund LP is not resolved by the Motion to Determine (as set forth in its Proof of Claim)

(c) Step 1 Enterprises LLC (no Proof of Claim);

(d) Jose Sorto (no Proof of Claim); and

(e) the Landlord as to any claims that the Debtor is responsible to make payments for any improvements under a disputed addendum (the addition of any second or third floors) above the restaurant facilities leased by the Debtor.

1.16 "Effective Date" means 30 days from the date upon which the Order of Confirmation of this or any amended plan of reorganization filed by the Debtor is entered by the Court assuming that no appeal from said Order of Confirmation is filed. If there is an appeal, the Effective Date will be 30 days after the date on which all appeals have been withdrawn, dismissed or otherwise completed, or 30 days after any such order becomes dispositive of said appeal and confirming a plan of the Debtor becomes final and subject to no further appeal.

1.17 "Equity Interest" means the equity interests of Hamza Hadani, HER Family Enterprises, LLC, and Youna Salhami in the Debtor.

1.18 "Estate Parties" means the persons referenced in Article XX of the Plan.

1.19 "Final Order" means an order of a court as to which any appeal that has been or may be taken has been resolved or as to which the time for appeal, or further appeal, or petition for a writ of certiorari, has expired.

1.20 "Lease" shall mean the original lease of the Debtor with the Landlord dated March 2008 and as amended.

1.21 "Motion to Assume" shall mean any motion by the Debtor pursuant to 11 U.S.C. § 365 to assume and/or assign the Lease.

1.22 "Motion to Determine" shall mean the Motion to Determine Value and Secured Status which appears as Docket Entry 60.

1.23 "Order of Confirmation" or "Confirmation Order" means the order confirming the Plan.

1.24 "Order on Motion to Assume" means the order entered by the Court disposing of the Motion to Assume. Although not entered at the time of this Plan, any Order on Motion to Assume shall, by this reference, be incorporated into this Plan once such Order becomes final.

1.25. "Order on Motion to Determine" shall mean any final order resolving the Motion to Determine. Although not entered at the time of this Plan, any Order on Motion to Determine shall, by this reference, be incorporated into this Plan once such Order becomes final.

1.26 "Person" includes an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision.

1.27 "Petition Date" means the date the Debtor filed its petition for relief.

1.28 "Post-petition Creditor" means a person holding a claim, except that it has accrued after the Petition Date, but who has not received allowance of such Claim with administrative priority under § 503 of the Code.

1.29 "Post-Petition Transfer" means any transfer recoverable under Chapter 5 of the Code.

1.30 "Professional Person" means a Person employed as a professional in the Case.

1.31 "Preference Claims" means the claims available under Chapter 5 of the Code for a trustee to recover payments as set forth in the Debtor's Statement of Financial Affairs or otherwise.

1.32 "Pre-Petition Contract" shall mean any agreement between the Debtor and any creditor and shall include the rights (if any) of any creditor in any security agreement, financing statement, and certificates of title.

1.33 "Projections" shall mean the Debtor's Budget, attached (collectively) as Exhibits 1-5.

1.34 "Proposed Dividend" shall mean the amount referenced in the Budget that will be paid monthly by the Debtor. This amount is subject to reduction by payment of administrative claims.

1.35 "Rules" means the Federal Rules of Bankruptcy Procedure, as supplemented by the local bankruptcy rules as adopted by the Court as amended from time to time.

1.36 "Trustee" shall mean the Subchapter V Trustee, Monique D. Almy, Esq.

All other terms defined in 11 U.S.C. §§ 101 and 102 are incorporated into this Plan.

## ARTICLE II – DISCLOSURES

2.1 General. The purpose of this disclosure is to provide parties with a brief history of the business operations of the debtor. This disclosure should provide parties with the information required under 11 U.S.C. § 1190. This disclosure sets forth certain information

regarding the debtors' assets, pre-petition history, significant events that have occurred in this case, and other sections of this Plan describe the debtor's anticipated financial affairs after confirmation. Creditors and other parties in interest are advised to read the Plan carefully and obtain the advice of independent legal counsel if desired.

2.2 Notice. All parties are advised and encouraged to read this Plan in their entirety before voting to accept or reject the Plan. Statements made in this disclosure are qualified entirely by reference to the Plan and other Exhibits served with the Plan. This disclosure contains summaries of certain provisions of certain valuations and other financial information, and certain events related to the Debtor's Chapter 11 case. Although the debtor believes that this information is accurate, such summaries are qualified to the extent that they are summaries and do not set forth the entire text of documents referred to. The information in this disclosure has been provided by the Debtor and its agents in good faith after a reasonable investigation, but the debtor is not able to warrant or represent that the information contained herein, including the financial information, is without any inadvertent inaccuracy or omission. Certain information contained in this disclosure and other portions of this Plan are, by their very nature speculative, containing estimates, assumptions and projections that may not be borne out by future events. Except as specifically noted in this Plan, this disclosure does not reflect any events or conditions that may occur after this date, nor has the information herein been audited. The information contained in this disclosure has been provided by the debtor, its attorney, and their agents.

2.3 History.

(a) The Debtor was organized as a District of Columbia corporation to operate a restaurant. The current trade name of the restaurant is Flavio's. The restaurant had formerly been operated under the trade name "Paper Moon." In 2008, the Debtor entered into the Lease with 1069-73 31st St., Limited Partnership for the use and occupancy of that property located at 1073 31st St. N.W., Washington, DC at which the debtor operates its restaurant. The Lease is set to expire in 2031.

(b) In late June 2024, the Debtor entered into a loan agreement with First Internet Bank of Indiana, where the servicing rights were transferred to Jaris Fund, LP. The initial amount of this loan was $250,000.

(c) The June 2024 loan was a renewal of an earlier loan the Debtor obtained from which was serviced by Jaris Fund, LP in the original amount of $300,000. The last payment of the earlier loan was made on June 24, 2024 in the amount of $36,500. Satisfaction of this earlier loan was a requirement for the June 2024 loan to be extended.

(d) Prior to the loan which was extended in late June 2024, there were at least three (3) earlier instances where Jaris Fund LP had extended credit to the Debtor, and in each such instance, the Debtor followed the pattern of retiring the earlier loan and then receiving another loan.

(e) Since 2019, the Debtor has obtained credit from a number of creditors, including those identified in the Motion to Determine. These creditors have recorded UCC-1

Financing Statements with the Office of Recorder of Deeds for the District of Columbia. However, as set forth in the Motion to Determine, there is no value in the assets of the Debtors to support a secured claim on the part of any of these creditors.

(f) Pre-petition, the Debtor had incurred significant liabilities with the Internal Revenue Service (the "IRS") for 941 tax obligations and with the District of Columbia Office of Tax and Revenue (the "DC Tax Office") for sales taxes collected. These taxing authorities had perfected liens against the assets of the Debtor and had threatened as of June 27, 2024, to actually attach funds available in the Debtor's bank account at Atlantic Union Bank.

(g) The Debtor had also been in litigation with its landlord before the Superior Court for the District of Columbia with regard to claims of past due rent and other amounts claimed to be due.

2.4 Management. The Debtor's pre-petition management was provided by Mekki Karrakchou and such management shall continue.

2.5. Operating Reports. The Debtor has filed Monthly Operating Reports with the Clerk of the Court on August 21, 2024[2] and September 23, 2024[3]. The Debtor anticipates filing additional Monthly Operating Reports on the 21st day of each following month through and including any month until a Confirmation Order is entered. All parties are advised to review each such Monthly Operating Report.

2.8 A sample ballot which may be submitted is attached to this Plan as Exhibit 2.

## ARTICLE III - DESCRIPTION OF THE PLAN

3.1 This is a reorganizing Plan to be funded by the operations of the Debtor. The Debtor's projections of its monthly income and expenses as well as the Debtor's projections of dividends under this Plan are set forth in Exhibit 1. The Debtor will make monthly payments as set forth in this Plan and in the Budget in satisfaction of the Debtor's obligations under this Plan.

3.2 In addition to the payments (in Section 3.1), any net proceeds recovered in any Avoidance Action (meaning any gross proceeds received less any administrative expenses incurred in prosecution) will be applied to the satisfaction of all allowed Claims under this Plan.

---

[2] The Debtor anticipates filing an Amended Monthly Operating Report with the Clerk of the Court to amend the report filed August 21, 2024. All parties are advised to review a copy of any Amended Monthly Operating Report, once filed.

[3] The Debtor anticipates filing an Amended Monthly Operating Report with the Clerk of the Court to amend the report filed September 23, 2024. All parties are advised to review a copy of any Amended Monthly Operating Report, once filed.

## ARTICLE IV – CRAMDOWN

The Debtor invokes the "cramdown" entitlement under 11 U.S.C. §1129(b) and 11 U.S.C. §§ 1191(b), (c), and (e) of the Code. That is, as long as the plan does not discriminate unfairly, and is fair and equitable with respect to any class of claims or interest that is impaired and has not accepted the Plan, and so long as the plan provides that all of the projected disposable income of the debtor to be received in during the commitment period, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or the value of the property to be distributed under the plan during the commitment period is not less than the projected disposable income of the debtor, the Court may confirm the Plan.

## ARTICLE V - CLASSIFICATION OF CLAIMS AND INTERESTS

5.1. All Claims, defined under §101(4) of the Code and all interests in equity securities as defined in §101(15) of the Code and are classified as follows:

5.2. Class 1: Allowed Administrative Claims. The Plan contemplates paying any allowed fees to counsel for the Debtor (John P. Forest, II and James T. Bacon) and any allowed fees to the Trustee in full on the Effective Date. The allowed Class 1 Claims shall include any services rendered after any confirmation of this Plan by counsel to the Debtor incident to any Avoidance Action.

5.3. Class 2: The priority component of the allowed Claim of the IRS and the priority component of the allowed Claim of the DC Tax Office each of which is entitled to priority treatment under 11 U.S.C. § 507(a)(8)(A) or (B).

5.4. Class 3: any Allowed Secured Claim (as may be determined by the Motion to Determine or otherwise).

5.5 Class 4: any claim of the Landlord for amounts owed under the Lease.

5.6 Class 5: any claim of either the IRS or the DC Tax Office which is:

(a) neither an Allowed Secured Claim nor a secured claim as a result of the Motion to Determine; and

(b) not part of any Class 2 Claim; and

(c) entitled to the treatment specified under 11 U.S.C. § 1129(a)(9)(C) or (D).

5.7 Class 6: the claims of all creditors (other than Administrative Creditors and holders of Equity Interests) who do not hold: (a) priority unsecured claims: (b) any Class 5 Claim; (c) a Class 4 Claim; or (d) or Allowed Secured Claims, including the under-secured portion of any creditor holding an Allowed Secured Claim.

5.8 Class 7: the Equity Interests.

## ARTICLE VI - ADMINISTRATIVE EXPENSES

6.1. Allowed Administrative Claims [Class 1] shall be paid in full, on the latter of the Confirmation Date or the date they are allowed by an Order of the Bankruptcy Court. The payments contemplated by the Plan shall constitute full satisfaction of Allowed Administrative Claims. Administrative Claims include any post-petition, unpaid bills or charges incurred in the ordinary course of business and the fees and expenses allowed to professionals employed upon Court authority to render services to the Debtor during the course of this case.

6.2. John P. Forest, II and James T. Bacon have been engaged and approved as a professional to represent the Debtor during the pendency of this bankruptcy case and Monique D. Almy has been appointed to serve as Subchapter V Trustee. Any fees for these persons are administrative claims payable by the Debtor pursuant to the Plan.

6.3 To be compensated, all professionals must apply to the Court for compensation and will be paid the amount which the Court allows.

## ARTICLE VII – ALLOWED SECURED CLAIMS - CLASS 3

7.1 The Class 3 Claim consists of the Allowed Secured Claim of such creditor(s) as may be determined by the Court though the Motion to Determine. The holder(s) of any Allowed Secured Claims shall receive a quarterly distribution in the amount of Three Thousand Dollars ($3,000) per month until the amount of the Allowed Secured Claim(s) with interest at the Applicable Rate, shall have been paid in full.

7.2 Notwithstanding any other terms or provisions of this Plan, the holder of any Allowed Secured Claim shall maintain and retain to the same extent and priority all of its liens and security interests held by such creditor with respect to any collateral.

## ARTICLE VIII - PRIORITY CLAIMS - CLASS 2

The holders of any allowed Class 2 Claims shall receive a quarterly distribution in the amount of the Proposed Dividend, less the amount of any quarterly payment to the holder(s) of any Allowed Secured Claim after Administrative Claims have been paid in full. Each quarterly distribution shall be paid to allowed priority claimants on a pro rata basis on the same schedule and terms as set forth in Section 12.2 of this Plan until holders of allowed Class 2 Claims have been paid in full.

## ARTICLE IX – LANDLORD CLAIM – CLASS 4

As the holder of the Class 4 Claim, the Landlord shall receive payment from the Debtor upon such terms and conditions as may be established in the Order on Motion to Assume.

## ARTICLE X
## CLAIMS OF THE IRS AND THE D.C. TAX OFFICE- CLASS 5

The holders of any allowed Class 5 Claims (the IRS and the DC Tax Office) shall receive a monthly distribution in the amount of the Proposed Dividend. Each quarterly distribution shall be paid to allowed priority claimants on a pro rata basis on the same schedule and terms as set forth in Article XIII of this Plan, after the payment of all Class 2 Claims until holders of allowed Class 5 Claims have been paid in full.

## ARTICLE XI – GENERAL UNSECURED CLAIMS - CLASS 6

11.1 The holders of any allowed Class 6 Claims shall receive a monthly distribution in the amount of the Proposed Dividend. Each quarterly distribution shall be paid to allowed priority claimants on a pro rata basis on the same schedule and terms as set forth in Section 12.2 of this Plan, after the payment of all Class 2 Claims and all Class 5 Claims.

11.2 The Class 6 Claims are impaired.

11.3 Any lien in favor of the holder of an allowed Class 6 Claim on account of an under-secured or general unsecured claim is extinguished and terminated to the extent of the unsecured amount of the Claim. Within thirty (30) days of any final payment to the holder of any Class 6 Claims, the holders of any Class 6 claims shall file with the appropriate governmental agency, a termination statement for any financing statement.

## ARTICLE XII – EQUITY INTERESTS - CLASS 7

This interest will receive no Plan distribution. This Class is impaired. The holders of the Equity Interests will retain their Equity Interests.

## ARTICLE XIII - PROVISIONS CONCERNING PLAN EXECUTION

13.1. Debtor Payments. Beginning on the first business day of the first month after the Effective Date, and continuing on the same date of the next 59 months, the Debtor will make payment of the Proposed Dividend, as well any monthly payments to be made to the holders of any Allowed Secured Claim under this Plan. .

13.2 De Minimis Matters. The Debtor shall not be required to make any periodic distribution to any one creditor if such distribution would be less than $100, such distribution to be held in reserve until the cumulative distribution to that creditor reaches $100 or until the last distribution payment under the Plan, whichever occurs first.

## ARTICLE XIV - PROVISION FOR DISPUTED CLAIMS

Any party may object to the allowance of any Claim within 30 days after the Effective Date by filing an objection with the Court and serving a copy on the holder of the Claim, in

which event the Claim objected to will be treated as a Disputed Claim under the Plan. If/when a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Debtor will make any payment of such Allowed Claim from the reserve.

## ARTICLE XV - CLAIMS AND DISTRIBUTION MATTERS

15.1. Any objection to a claim must be filed within 30 days after the Effective Date. If no objection is filed, such claim shall be deemed to be an Allowed Claim as filed.

15.2. Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedules prepared and filed with the Court, pursuant to F. R. Bankr. P. 1007(b), or at such later address as may be of record with the Clerk of the Court.

15.3. If any holder's distribution is returned as undeliverable, then such returned distribution shall be held subject to the Allowed Claim of such holder. Such returned distribution shall be distributed as follows: (a) if the Debtor is notified of such holder's then current address or the holder is otherwise found within 90 days after the distribution has been returned as undeliverable, then any returned distributions (without interest) shall be delivered to the holder; but (b) all returned distributions that remain unclaimed more than 90 days after the distribution has been returned as undeliverable shall revert to the Debtor free and clear of the Allowed Claim of such holder and no further distributions shall be made to the holder whose distribution was returned, provided that Debtor shall make inquiry of the postal service if the holder has given the postal service an alternative mailing address.

15.4. Notwithstanding any other provision of the Plan specifying a date or time for payment or distribution hereunder, payments in respect of any claim which at such date or time is disputed, unliquidated or contingent shall not be made until such claim becomes an Allowed Claim, whereupon such payment and distribution shall be made promptly in accordance with the Plan, as if no objection had been filed to such claim. If any claim is not allowed on such date, a reserve for such claim shall be established and held until the claim is allowed or disallowed, whereupon the reserve shall be disbursed in accord with the Order of this Court.

## ARTICLE XVI - LIQUIDATION ANALYSIS

Based upon the: (i) the value of the Debtor's assets as set forth in the Schedules; (ii) the amount of the secured claims set forth in the Proof of Claim filed by the IRS; (iii) the amount o the secured claims set forth in the Proof of Claim filed by the DC Tax Office; and (iv) the proposed dividend under the Plan, the Debtor submits that the liquidation test pursuant to 11 U.S.C. § 1129(a)(7)(A)(ii) is satisfied.

## ARTICLE XVII - AMENDMENTS AND WAIVERS

Except as otherwise specifically set forth in the Plan, or as may be allowed by the Code, any term of the Plan may be amended and the observance of any term of the Plan may be waived (either generally or in a particular instance and either retroactively or prospectively) with the

consent to such amendment or waiver by the holders of 51% of the amount of Allowed Claims affected by such amendment or waiver.

## ARTICLE XVIII - EXECUTORY CONTRACTS

The Debtor's executory contracts, to the extent not already assumed or otherwise addressed in this Plan, are hereby assumed.

## ARTICLE XIX – CONFIRMATION

19.1 **Confirmation Procedures. At this time, no hearing has been set for the Court to consider confirmation of this Plan. Any hearing may be set by a separate notice of an order of the Court. Please carefully review any such notice or order.**

19.2 Impaired Classes to Vote: To the extent the Court determines any Creditor is impaired, each Holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to reject the Plan.

19.3 Acceptance by Class of Creditors: An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. A Class of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Ballot Date.

19.4 Cramdown: In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1191(b) of the Bankruptcy Code or amend the Plan in accordance with section 1127(a) of the Bankruptcy Code.

## ARTICLE XX - EFFECT OF CONFIRMATION

20.1 Binding Effect. Upon entry of the Order of Confirmation, the provisions of the Plan bind the Debtor and all Creditors and equity security holders, whether or not the Claim or interest of such Creditor or equity security holder is impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

20.2 Vesting. Except as otherwise provided in the Plan or the Order of Confirmation, confirmation of the Plan vests all of the property of the estate in the Debtor free and clear of all Claims, liens, and interests of Creditors and equity security holders.

.

20.3 Discharge:

(a) If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt, including any Non-Dischargeable Claim, that arose before confirmation of this Plan, to the fullest extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed or preserved by this Plan.

(b) If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due under the Plan.

20.4 Pre-Discharge Injunction. Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. As of the Effective Date, all Persons that have held, hold, or may hold Claims (including, but not limited to, Administrative Expense Claims) will be enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim, Administrative Expense Claim against the Trustee, the Debtor, and their Professionals, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Expense Claims based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Case; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Expense Claims); and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Expense Claims) until entry of the Discharge, (as described below), except said injunction against commencing or continuing in any manner any action or other proceeding of any kind on account of any Claim, Administrative Expense Claim as to Estate Parties based on any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date, shall continue after discharge, and as to any Non-Dischargeable Claim, shall continue so long as the Debtor is making payment to the holder of the Non-Dischargeable Claim during the extended period provided by the Plan. Provided however, the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission is determined to have constituted gross negligence, willful misconduct or bad faith.

## ARTICLE XXI - RETENTION OF JURISDICTION

21.1 Retention of Jurisdiction. Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the

allowance or priority of Claims or Interests and the determination of requests for the payment of Claims entitled to priority under Bankruptcy Code section 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

(b) Hear and determine all applications for compensation and reimbursement of expenses of the Trustee and Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Debtor may be made in the ordinary course of business without the approval of the Bankruptcy Court;

(c) Hear and determine all matters with respect to the assumption or rejection of any Executory Contract or unexpired lease with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d) Effectuate performance of and payments under the provisions of this Plan;

(e) Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

(f) Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan or the Confirmation Order;

(g) Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(h) Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

(j) Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(k) Hear and determine any matters arising in connection with or relating to this Plan, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Confirmation Order, or any Plan Document;

(l) Enforce all orders, judgments, injunctions, releases, exculpations,

indemnifications and rulings entered in connection with the Case;

(m) Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

(n) Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(o) Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(p) Hear and determine any Causes of Action;

(q) Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

(r) Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(s). Enforce all orders previously entered by the Bankruptcy Court;

(t) Dismiss the Case; and

(u) Enter a final decree closing the Case.

21.2 Abstention. If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

21.3 Termination. Except as provided in this Article, the Court's jurisdiction shall terminate as to the Case on the Effective Date.

## ARTICLE XXII - STAUTORY REMEDY

The following remedies are provided pursuant to 11 U.S.C. § 1191(c)(3)(B) and shall be the exclusive remedies to any creditor. In the event any payment owed by the Debtor is made more than sixty (60) days after it is due, any party in interest may file a motion to dismiss this bankruptcy case.

## ARTICLE XXIII – MISCELLANEOUS

23.1 Notices. All notices required or permitted to be made in accordance with the Plans shall be in writing and shall be delivered personally or by facsimile, or mailed by registered or certified mail with return receipt requested as follows: (a) if to the Debtor, then to John P. Forest, II, 11350 Random Hills Road, Suite 700, Fairfax, VA 22030; (b) if to a holder of

an Allowed Claim, then at the address set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedules prepared and filed with the Court pursuant to Fed R. Bankr. P. 1007(b); and (c) notice shall be deemed given when received. Any Person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the Person to be charged with the knowledge of such change.

23.2 Reserved Rights. The Debtor reserves the right to revoke and withdraw the Plan prior to entry of an Order of Confirmation. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding involving the Debtor.

23.3 Neither the filing of the Plan, nor any statement or provision contained herein shall (a) be or be deemed to be an admission against interest; and (b) until the Confirmation Date, be or be deemed to be a waiver of any rights which any Creditor may have against either the Debtor, its property, or any other Creditor of the Debtor; and until the Confirmation Date all such rights are specifically reserved.

23.4 All administrative claims must be filed within 60 days of the Effective Date; provided, however that any administrative claim incident to any steps to prosecute any Avoidance Action (incurred after the Effective Date) shall be filed on a quarterly basis.

23.5 In the event an objection is filed to any claim, no distributions shall be made on account of such claim until such claim becomes an Allowed Claim.

23.6 After payment of all dividends owed to the holder of an Allowed Secured Claim, each such creditor shall execute and deliver all appropriate documents reasonably required to release any security interest held by each such creditor in any assets of the Debtor.

23.7 In the event of any conflict between any information appearing in the Plan and any information appearing in an Exhibit, the information set forth in the Exhibit shall control.

23.8 Any reference to an Article of Section in this Plan shall, without more, be deemed a reference to an Article of Section of this Plan.

23.9 Any headings used in any Article or Section of this Plan shall be for ease of reference only and shall not be applied to interpret the text of any Article of Section of this Plan.

23.10 Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan. If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day

Respectfully submitted,

*/s/ James T. Bacon*
James T. Bacon
Mahdavi Bacon Halfhill & Young PLLC
11350 Random Hills Rd., Suite 700
(703) 352-1300
DC Bar No. 416209
*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, a copy of this Plan of Reorganization was served through the Court's Electronic Case Filing System and was mailed to:

1069-73 31st St. Ltd
Partnership, 1320 19th St.,
N.W., Suite 800
Washington, DC 20036

Atipana Capital
43 W. 23rd St., Second Fl.
New York, NY 10010

CT Corporation System
330 N. Brand Blvd., Suite 700
Glendale, CA 91023

Funding Metrics LLC
3220 Tillman Dr., Suite 200
Bensalem, PA 19020

Youane Salhami
309 Yoakum Pkwy., Apt. 912
Alexandria, VA 22304

Blue Ridge Bank, NA
17 W. Main St.
Luray, VA 22835

Jose N. Sorto
520 Irving St., N.W.
Washington, DC 20010

Max Merchant Funding LLC
6931 Arlington Rd., Suite 480
Bethesda, MD 20814

Hamza Hadani
400 Army Navy Dr., Apt. 911
Arlington, VA 22202

U.S. Small Business Admin.
2 N. 20th St., Suite 203
Birmingham, AL 35203

D.C. Office of Tax and Revenue
1101 4th St., S.W., Suite 270 W
Washington, DC 20024

Sysco, Inc.
1920 Stanford Ct.
Landover, MD 20785

Pepco
701 9th St., N.W.
Washington, DC 20001

Sysco
235 Giaconda Way, Suite 217
Tucson, AZ 85704

Vox Funding
1407 Broadway, 29th Fl.
New York, NY 10018

Ecolab
1 Ecolab Pl.
St. Paul, MN 55102

Internal Revenue Service
Centralized Insolvency Op's
Box 7346
Philadelphia, PA 19101-7346

H&R Family Enterprises, LLC
7902 Tysons One Pl
Apt. 1903
McLean, VA 22102

*/s/ James T. Bacon*
James T. Bacon