# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement") is entered into this ___ day of November 2021 between 1069-73 31st Street Limited Partnership ("Owner" and/or "Landlord") and Melben, Inc. ("Tenant"), Abid Karrakchou and Mohamed El Mekki Karrakchou ("Guarantors") (Tenant and Guarantors collectively referred to as the "Tenant") (all collectively referred to as the "Parties"). The Parties agree as follows"

WHEREAS, Landlord owns real property located at 1069-1073 31st Street NW, Washington, DC 20007 ("Building" and/or Premises");

WHEREAS, on or about December 20, 2008, the Parties entered into a lease agreement ("Lease") by which the Tenant agreed to lease the Premises from the Landlord for a term of One Hundred Twenty (120) months commencing on November 15, 2009 and scheduled to terminate on November 14, 2019 ("Lease Term");

WHEREAS, the Tenant continued to occupy the Premises as a hold-over tenant after the expiration of the Lease term and continued paying rent through February 2020;

WHEREAS, the Tenant continues to occupy and use the Premises to date but has not paid any rent or Additional Rent (as defined in the Lease) from March 2020 through present;

WHEREAS, as a result of the non-payment of rent between March 1, 2020 and October 31, 2021, the rent arrearages are $638,328.64 ("Rent Arrearages"), not including Additional Rent;

WHEREAS, on or about April 19, 2021, Landlord filed a lawsuit against the Tenant for back rent and Additional Rent in the Superior Court for the District of Columbia, Civil Action No. 2010 CA 001212 B ("Lawsuit"); and

WHEREAS, the Parties desire to avoid the expense, inconvenience, and the inherent risk of litigation and wish to resolve all matters amicably by execution of this Agreement.

NOW THEREFORE, the Parties hereby agree that all matters between and amongst the Parties are resolved to date in consideration of the following mutual promises, terms, and conditions, the sufficiency of which is hereby acknowledged by the Parties, with the aforementioned recitals incorporated by reference:

1. Recitals Incorporated by Reference. The recitals set forth above are incorporated by reference as if fully set forth herein.

2. Rent Arrearages. Tenant shall pay $554,118.88 for the arrearages of the Lease ("Total Rent Arrearages"). Upon execution of this Agreement, Tenant shall pay to Landlord Two Hundred Fifty Thousand Dollars ($250,000.00) towards the Total Rent Arrearages. Tenant agrees to pay $150,000 for the Total Rent Arrearages no later than November 30, 2021. Landlord agrees to forgive rent for March and April 2020 as well

MK

as give Tenant a rent credit of Twenty Five Thousand Dollars ($25,000) reducing the amount rent remaining due to Landlord after these payments and credits to One Hundred Fifty Four Thousand One Hundred Eighteen and 88/100 Dollars ($154,118.88) ("Outstanding Rent"). The Outstanding Rent owed to Landlord by Tenant shall be amortized over the period of the Sixty (60) month Lease Extension (as defined below) and shall be paid per the Rent Schedule as attached hereto as Exhibit A.

3. Additional Rent. Upon receipt of the loan proceeds from the SBA loan Tenant is receiving, Tenant shall pay Landlord Seventy Thousand One Hundred and Twenty Eight Dollars and Thirty Four Cents ($70,128.34) for the 2020 Real Property Taxes and Sixty Two Thousand Two Hundred Thirty Three Dollars and Eighty Seven Cents ($62,233.87) for the 2021 Real Property Taxes. If the SBA loan is not funded by December 31, 2021, Tenant shall pay Landlord the 2020 Real Estate taxes of $70,128.34 by December 31, 2021. Tenant shall pay the 2021 Real Estate taxes by March 30, 2022. Tenant shall remit payment to Landlord for all future Real Estate Taxes in accordance with the Lease. Tenant warrants that it will comply with its current agreement/payment plan with DC WASA for water arrearages and warrants that it will stay current on all water and utility bills. Failure to do so shall constitute a Default under the terms of the Lease as amended,

4. Guarantors. Abid Karrakchou and Mohamed El Mekki Karrakchou shall remain personal guarantors of the Tenant's obligations and duties under the Lease and the Lease Extension provided herein.

5. Repairs/Improvements. Within three (3) months of execution of this Agreement, Tenant shall, at its own expense, cause any and all repairs and/or improvements to the HVAC system, roof, and any other areas of the Premises to be made to satisfy and comply with its obligations under the Lease and/or all District of Columbia code, rules and regulations.

6. Stay and Dismissal of Lawsuit. Following execution of this Agreement, the parties shall jointly file a Joint Motion to Stay the Lawsuit. Following payment of the funds due from Tenant to Landlord upon execution of this Agreement and the real estate taxes to be paid per Paragraph 3 above, counsel for Landlord and counsel for Tenant shall jointly file a Stipulation of Dismissal to dismiss the Lawsuit.

7. Lease Amendment/Extension. The Parties hereby agree that the Lease shall be amended as set forth below and that this Agreement shall be deemed an Amendment to the Lease and a Lease Extension as provided herein. Notwithstanding that execution of this Agreement shall constitute an Amendment to the Lease, the parties agree to execute an amendment to the Lease further memorializing the terms contained herein within Thirty (30) days from the effective date of this agreement. All terms, duties and obligations of each party under the Lease shall remain in full force and effect unless specifically amended herein. The Lease is hereby amended as follows:

    a. The Lease Term shall be extended an additional Five (5) years beginning on December 1, 2021 through November 30, 2026 at the rental rates as set forth in Exhibit B. The parties agree that the December 1, 2021 rent

AK  [initials]

payment along with the first monthly payment of the Outstanding Rent shall be paid to Landlord by Tenant on December 6, 2021 and be deemed timely remitted. This is a one-time waiver by Landlord for late acceptance of rent and shall not constitute a waiver by Landlord for any future late payments.

b. Provided that Tenant is not in default under the Lease and has complied with all obligations related to its tenancy and this Agreement, Tenant shall have a renewal option for an additional Five (5) years under the same terms and conditions of Section 3(b) of the Lease.

c. The Tenants agree that the Lease as amended herein includes a WAIVER OF NOTICE TO QUIT for non-payment of rent.

d. Tenant and Guarantors agree that within Ten (10) business days form the effective date of this agreement they shall update the records of the District of Columbia DCRA to reflect a proper and legal resident agent for corporation and the Guarantors agree that by virtue of executing this Agreement, that the guarantors accept service of process on them in their capacity as guarantors with service on the registered agent of the corporation or service through the mayor's office as provided in the Super. Ct. Civ. Rules.

8. **Intent to Be Bound. All signatories have each carefully read and understand the terms and contents of this Agreement, have had the opportunity to consult with their own attorneys, and enter into this Agreement of their own free will with the intent to be bound legally thereby.**

9. No Admission. All Parties understand and agree that all Parties specifically deny liability of any and every sort. It is further understood and agreed that this Agreement is not to be construed as an admission of liability by any Party, but rather, as a compromise and settlement of claims which are specifically denied and vigorously disputed. This Agreement is entered into as a compromise in order to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown.

10. Mutual Release of Claims. Except as provided herein, this Agreement constitutes a full and mutual release of all claims between the Parties, of any claims whatsoever, arising out of any circumstance, through the date of this Agreement. This irrevocable and unconditional release shall serve to forever discharge the other Party, their agents, servants, employees, partners, associates, independent contractors, volunteers, heirs, predecessors, successors, attorneys, affiliates, officers, directors, attorneys, assignees and assignors, insurance carriers and representatives from any and all actions, cause of action, suits, controversies, accounts, debts, claims, demands, and liabilities of every name and nature, both in law and equity, including but not limited to all damages including punitive or exemplary damages or fines, costs, loss of use, loss of services, loss of consortium or society, breach of contract and warranty, expenses, consequential damages, property damages, reputational damages, lost wages, loss of property value, or any other element of injury or damage whatsoever on account of or in any way growing out of, any and all known and unknown, apparent and not apparent, past, present, and future injuries or damage or claims. Nothing in this Release shall relieve any party of their duties and obligations under the Lease unless specifically released herein.

11. Miscellaneous. (a) If any part of this Agreement is adjudged invalid, the remainder will not be invalidated by this. (b) No provision of this Agreement shall be interpreted for or against a party because that party or that party's legal representative drafted such provision, instead this Agreement shall be construed as if jointly prepared by the Parties. (c) Time is of the essence for all dates. (d) This writing contains the full, final and exclusive statement of the Agreement between the Parties and no agreement or warranty shall be binding on either Party unless expressly contained in this Agreement, except for the Lease. (e) No modification, waiver or amendment of this Agreement shall be valid unless the same is in writing and executed by all the Parties hereto. Waiver of any one provision shall not be deemed to be a waiver of any other provision herein. (f) All terms and obligations herein shall be deemed substantive and material and not merely *de minimus*. (g) If any Party has to enforce a breach of a term of this Agreement, the non-breaching Party shall be entitled to attorneys' fees. All right to a jury demand is hereby waived. All Parties agree to accept service of process by delivery of a summons, complaint, and/or other any other legal pleading by electronic mail, to counsel or directly to the party, at the addresses indicated herein.

12. Counterparts/ Electronic Signature. This Agreement may be executed in one or more counterparts and signatures may be transmitted electronically. The Parties agree that for the purposes of this Agreement, an electronic signature shall be acceptable, and shall be deemed as effective as if it were an original signature. When taken together, all executed portions shall be deemed to comprise a complete and entire agreement.

13. COVID-19. The Parties agree and acknowledge that no Party's performance shall be contingent upon anything related to the ongoing health emergency. Neither the Coronavirus Support Emergency Amendment Act of 2020, the Coronavirus Support Clarification Emergency Act of 2020, the Coronavirus Support Congressional Review Emergency Amendment Act of 2020, nor any other statutes, rules, regulations, laws, or policies that may affect the computation of time or any other rights or obligations pertinent hereto shall be construed as superseding the Parties' contractual obligations pertaining to performance of the duties and obligation herein including without limitation the performance of the Lease as amended by the terms of this Agreement.

14. Governing Law. This Agreement shall be governed under the laws of the District of Columbia.

**IN WITNESS WHEREOF**, the Parties have caused this Settlement Agreement to be executed and sealed, all done as of the date first herein above written:

LANDLORD: 1069-73 31st Street Limited Partnership

BY: ______________________
Name: Lida Soleiman
Title: Partner

TENANT: MELBEN, INC.

BY: Mekki Karrakchou
Name:
Title: president

GUARANTORS:

______________________
Abid Karrakchou

______________________
Mohamed El Mekki Karrachou

| Year | Increase (0.04%) | Amount |
|---|---|---|
| 2019 | N/A | $28,466.23 |
| 2020 | $1,138.65 | $29,604.88 |
| 2021 | $1,184.20 | $30,789.08 |
| 2022 | $1,231.56 | $32,020.64 |

| Month | Rent | Penalty (150%) | Late Fee (5%) |
|---|---|---|---|
| Mar-20 | FORGIVEN | FORGIVEN | FORGIVEN |
| Apr-20 | FORGIVEN | FORGIVEN | FORGIVEN |
| May-20 | $4,604.88 | $19,407.32 | $6,085.12 |
| Jun-20 | $29,604.88 | $44,407.32 | $31,085.12 |
| Jul-20 | $29,604.88 | $44,407.32 | $31,085.12 |
| Aug-20 | $29,604.88 | $44,407.32 | $31,085.12 |
| Sep-20 | $29,604.88 | $44,407.32 | $31,085.12 |
| Oct-20 | $29,604.88 | $44,407.32 | $31,085.12 |
| Nov-20 | $30,789.08 | $46,183.62 | $32,328.53 |
| Dec-20 | $30,789.08 | $46,183.62 | $32,328.53 |
| Jan-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Feb-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Mar-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Apr-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| May-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Jun-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Jul-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Aug-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Sep-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Oct-21 | $30,789.08 | $46,183.62 | $32,328.53 |
| Nov-21 | $32,020.64 | $48,030.96 | $33,621.67 |
| Total | $554,112.88 | $843,660.72 | $583,074.75 |

| Year | Monthly | Total Annual Rent |
|---|---|---|
| 2022 | $32,020.64 | $384,247.68 |
| 2023 | $ 33,301.47 | $399,617.64 |
| 2024 | $ 34,633.53 | $415,602.36 |
| 2025 | $ 36,018.87 | $432,226.44 |
| 2026 | $ 37,459.62 | $449,515.44 |

| Total Back Rent | Monthly Payment for Back Rent |
|---|---|
| $154,112.88 | $2,568.65 |

| Month | Rent | Rent + Overdue Rent Paid Back Over 60 Months |
|---|---|---|
| Dec-21 | $32,020.64 | $34,589.29 |
| Jan-22 | $32,020.64 | $34,589.29 |
| Feb-22 | $32,020.64 | $34,589.29 |
| Mar-22 | $32,020.64 | $34,589.29 |
| Apr-22 | $32,020.64 | $34,589.29 |
| May-22 | $32,020.64 | $34,589.29 |
| Jun-22 | $32,020.64 | $34,589.29 |
| Jul-22 | $32,020.64 | $34,589.29 |
| Aug-22 | $32,020.64 | $34,589.29 |
| Sep-22 | $32,020.64 | $34,589.29 |
| Nov-22 | $ 33,301.47 | $35,870.12 |
| Dec-22 | $ 33,301.47 | $35,870.12 |
| Jan-23 | $ 33,301.47 | $35,870.12 |
| Feb-23 | $ 33,301.47 | $35,870.12 |
| Mar-23 | $ 33,301.47 | $35,870.12 |
| Apr-23 | $ 33,301.47 | $35,870.12 |
| May-23 | $ 33,301.47 | $35,870.12 |
| Jun-23 | $ 33,301.47 | $35,870.12 |
| Jul-23 | $ 33,301.47 | $35,870.12 |
| Aug-23 | $ 33,301.47 | $35,870.12 |
| Sep-23 | $ 33,301.47 | $35,870.12 |
| Oct-23 | $ 33,301.47 | $35,870.12 |
| Nov-23 | $ 34,633.53 | $37,202.18 |
| Dec-23 | $ 34,633.53 | $37,202.18 |
| Jan-24 | $ 34,633.53 | $37,202.18 |
| Feb-24 | $ 34,633.53 | $37,202.18 |
| Mar-24 | $ 34,633.53 | $37,202.18 |
| Apr-24 | $ 34,633.53 | $37,202.18 |
| May-24 | $ 34,633.53 | $37,202.18 |
| Jun-24 | $ 34,633.53 | $37,202.18 |
| Jul-24 | $ 34,633.53 | $37,202.18 |
| Aug-24 | $ 34,633.53 | $37,202.18 |
| Sep-24 | $ 34,633.53 | $37,202.18 |
| Oct-24 | $ 34,633.53 | $37,202.18 |
| Nov-24 | $ 36,018.87 | $38,587.52 |
| Dec-24 | $ 36,018.87 | $38,587.52 |
| Jan-25 | $ 36,018.87 | $38,587.52 |
| Feb-25 | $ 36,018.87 | $38,587.52 |
| Mar-25 | $ 36,018.87 | $38,587.52 |
| Apr-25 | $ 36,018.87 | $38,587.52 |
| Jun-25 | $ 36,018.87 | $38,587.52 |
| Jul-25 | $ 36,018.87 | $38,587.52 |
| Aug-25 | $ 36,018.87 | $38,587.52 |
| Sep-25 | $ 36,018.87 | $38,587.52 |
| Oct-25 | $ 36,018.87 | $38,587.52 |
| Nov-25 | $ 37,459.62 | $40,028.27 |
| Dec-25 | $ 37,459.62 | $40,028.27 |
| Jan-26 | $ 37,459.62 | $40,028.27 |
| Feb-26 | $ 37,459.62 | $40,028.27 |
| Mar-26 | $ 37,459.62 | $40,028.27 |
| Apr-26 | $ 37,459.62 | $40,028.27 |
| May-26 | $ 37,459.62 | $40,028.27 |
| Jun-26 | $ 37,459.62 | $40,028.27 |
| Jul-26 | $ 37,459.62 | $40,028.27 |
| Aug-26 | $ 37,459.62 | $40,028.27 |
| Sep-26 | $ 37,459.62 | $40,028.27 |
| Oct-26 | $ 37,459.62 | $40,028.27 |
| Nov-26 | $38,958.01 | $41,526.66 |

EXHIBIT
A