Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-232-ELG |
| | ) | (Chapter 11) |
| MELBEN, INC. | ) | |
| | ) | |
| Debtor. | ) | |

# PLAN OF REORGANIZATION

Comes now Melben, Inc. ("Melben" or the "Debtor"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A, and provides the following plan of reorganization (the "Plan"):

## Background for Cases Filed Under Subchapter V

### a. Description and History of the Debtor's Business

Almost precisely 42 years ago—in November 1984—the Debtor was organized pursuant to the laws of the District of Columbia for the purpose of operating a restaurant. And that is precisely what Melben has done throughout the intervening decades, having once traded as "Paper Moon" and more modernly operating under the name of "Flavio's."

Situated at the heart of Georgetown, Melben's dining facility is amongst the preeminent Italian eateries in the nation's capital. With a specious premise, an eclectic menu, and an al fresco aura, the Debtor's operation is a quintessential part of the neighborhood it occupies and an irreplaceable component of the city it calls home.

No one factor directly informed the difficult decision to seek bankruptcy relief, but this case has—in turn—revealed myriad issues with a landlord, historic tax problems, and many of the other financial obligations that so often beget the filing of small business chapter 11 cases. Nor has this case proven simple, with the Debtor being confronted with a raft of issues seemingly more complex than subchapter V ordinarily invites—not the least of which involving the exit of the Debtor's original counsel from the proceeding.

Yet, with lessons learned along the way, and the institutional knowledge derivative of more than 40 years of ongoing operations, the Debtor proudly presents this plan and, through such, a clean pathway to reorganization and the next 40+ years of operation.

**b. Liquidation Analysis & Secured Claim Valuation**

To confirm the Plan, this Honorable Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The Debtor entered bankruptcy with $35,364.00 in assets. *See* Order, ECF No. 100, at p. 2. The whole of those assets are subject to the lien of the District of Columbia. *Id.* Accordingly, in a chapter 7 liquidation, there would be no unencumbered assets to distribute to creditors and general unsecured creditors would each receive $0.00.

The total sum available for distribution to unsecured creditors, through this plan, will ultimately depend on the size of administrative claims. Suffice it to posit, however, the total sum distributed to unsecured creditors will not be less than $0.00, though.

**c. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Forward-looking financial projections for the Debtor are attached hereto as **Exhibit A**. These figures show that the Debtor will have projected disposable income (as defined in § 1191(d) of the Bankruptcy Code), remaining after the payment of administrative expenses addressed below, for the period in § 1191(c)(2).

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1. Summary**

This Plan under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the general cash flow of the Debtor.

The Plan provides for:

- 1 class of secured claims;
- 1 class of priority claims;
- 2 classes of non-priority, unsecured claims; and
- 1 class of equity holders.

The Plan also provides for the payment of administrative priority claims other than those placed in classes.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2. Classification of Claims and Interests**

**Section 2.01 Class 1** The secured claim of the District of Columbia

**Section 2.02 Class 2** The priority claims of the District of Columbia and the Internal Revenue Service

**Section 2.03 Class 3** The unsecured claim of Jaris Fund, LP

**Section 2.04 Class 4** The claims of all unsecured creditors except for Jaris Fund, LP

**Section 2.05 Class 5** Equity

The foregoing classes, and their constituent creditors, are broken down as follows:

| Creditor | Class | Claim No. | Secured | Priority | Unsecured Non-Priority |
|---|---|---|---|---|---|
| American Express National Bank | 4 | 3 | $0.00 | $0.00 | $28,458.77 |
| Atipana Capital | 4 | n/a | $0.00 | $0.00 | $200,000.00 |
| Blue Ridge Bank | 4 | n/a | $0.00 | $0.00 | $0.00 |
| DC Government of Tax and Revenue | 1, 2 | 1 | $35,364.00 | $190,246.37 | $456,390.86 |
| Funding Metrics LLC | 4 | n/a | $0.00 | $0.00 | $132,000.00 |
| Internal Revenue Service | 2 | 2 | $0.00 | $346,437.47 | $284,103.96 |
| Jaris Fund, LP | 3 | 7 | $0.00 | $0.00 | $150,000.00 |
| Max Merchant Funding | 4 | n/a | $0.00 | $0.00 | $0.00 |
| US Small Business Administration | 4 | 9 | $0.00 | $0.00 | $567,904.18 |
| 1069-73 31st St. LP | 4 | 8 | $0.00 | $0.00 | $424,035.38 |
| Hamza Hadani | 4 | n/a | $0.00 | $0.00 | $0.00 |
| HER Family Enterprises, LLC | 4 | n/a | $0.00 | $0.00 | $0.00 |
| Jose N. Sorto | 4 | n/a | $0.00 | $0.00 | $0.00 |
| Step 1 Enterprises LLC | 4 | n/a | $0.00 | $0.00 | $0.00 |
| Sysco, Inc. | 4 | n/a | $0.00 | $0.00 | $16,000.00 |
| Vox Funding | 4 | n/a | $0.00 | $0.00 | $32,000.00 |
| Youane Salhami | 4 | n/a | $0.00 | $0.00 | $0.00 |
| Southern Glazer's Wine and Spirits of Maryland/DC | 4 | 4 | $0.00 | $0.00 | $808.18 |
| Bank of America, N.A. | 4 | 5 | $0.00 | $0.00 | $5,249.57 |
| Macomb Properties, LLC | 4 | 6 | $0.00 | $0.00 | $566,508.03 |
| Total | | | $35,364.00 | $536,683.84 | $2,863,458.93 |

## Article 3. Treatment of Administrative Expense Claims and Court Costs

| | | |
|---|---|---|
| **Section 3.01** | **Unclassified Claims** | Under § 1123(a)(1) of the Bankruptcy Code, certain administrative expense claims are not in classes. |
| **Section 3.02** | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full upon such other terms as may be agreed upon by the holder of the claim and the Debtor or, absent agreement, during the life of the Plan, pursuant to Section 1191(e) of the Bankruptcy Code. All professionals. including the Debtor's counsel and the Subchapter V Trustee, will need to file applications with the Court to seek approval of their fee and expenses as allowed administrative expense claims within 30 days of the Effective Date. |
| **Section 3.03** | **Priority Tax Claims** | Each holder of a priority tax claim will be paid in full under this Plan. |
| **Section 3.04** | **Statutory Fees** | There are no statutory fees due in this case. |
| **Section 3.05** | **Prospective Quarterly Fees** | There are no prospective quarterly fees that will be due in this case. |

## Article 4. Treatment of Claims and Interest Under the Plan

| **Class** | **Impairment** | **Treatment** |
|---|---|---|
| Class 1 – District of Columbia | Impaired | Class 1 consists of the secured claim of the District of Columbia, in the amount of $35,364.00. This claim will be paid, *pari passu* with the Class 2 claim of the District of Columbia (and the Internal Revenue Service) over the life of this Plan, in quarterly installments. |
| Class 2 – Priority Tax Claims | Impaired | This class will be paid, *pari passu* with Class 1, over the life of this Plan, in quarterly installments. |
| Class 3 – Jaris Fund, LP | Impaired | This class will be the total sum of $150,000.00, in six equal monthly of $25,000.00 each, commencing in the sixty-first month following |

| | | |
|---|---|---|
| | | confirmation of this Plan. For the avoidance of doubt, these payments shall occur outside of this Plan and are merely noted herein for context. The Debtor shall have no obligation to Jaris Fund, LP under this Plan and Jaris Fund, LP shall take nothing under this Plan. |
| Class 4 – General Unsecured Creditors | Impaired | This Class shall take nothing under this Plan. |
| Class 5 – Equity | Unimpaired | The Debtor's equity interests shall remain unchanged |

**Article 5. Allowance and Disallowance of Claims**

**Section 5.01 Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02 Delay of Distribution of Disputed Claims.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

**Section 5.03 Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6. Provisions for Executory Contracts and Unexpired Leases.** The Debtor's executory contracts, to the extent not already assumed or otherwise addressed in this Plan, are hereby assumed.

**Article 7. Means for Implementation of the Plan**

The Debtor will continue to operate a restaurant in Georgetown, for the life of this Plan. Commencing on April 15, 2027, and continuing on the 15th day of each third month thereafter (i.e., quarterly), the Debtor will make payments to the Class 1 and Class 2 creditors, *pari passu* with administrative claimants. The quarterly payment sums will be as follows:

April 15, 2027: $29,175.80

July 15, 2027: $57,493.20

October 15, 2027: $71,352.18

January 15, 2028: $57,307.89

April 15, 2028: $27,593.12

July 15, 2028: $87,430.09

October 15, 2028: $80,455.58

January 15, 2029: $64,123.51

April 15, 2029: $25,895.88

July 15, 2029: $91,075.76

October 15, 2029: $80,286.70

The total sum of the foregoing distributions is $672,189.71. The total of the Class 1 ($35,364.00) and Class 2 ($536,683.84) claims is $572,047.84. It is reasonably anticipated administrative claims in this case will exceed $100,141.87, thereby consuming the remaining monies available for distribution. To the extent additional monies are owed to administrative claimants, such funds will be paid on November 1, 2029.

**Article 8. General Provisions**

**Section 8.01 Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101-02 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**Section 8.02 Effective Date.** The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. The Debtor will file a notice of the effective date, on the docket of this case, within seven days of the effective date.

**Section 8.03 Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04 Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors, assigns and/or receiver(s) of such entity.

**Section 8.05 Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including section 1112 thereof, inclusive of its allowances for the bringing of a motion to convert this proceeding to one under Chapter 7 of the Bankruptcy Code), as well as the right to seek recourse for breach of contract together with such remedies as this Honorable Court may deem just and proper, sitting as a court of equity; such rights will also vest in any interested parties with Article III standing to pursue such rights. A default hereunder shall be deemed to occur if the Debtor fails to make any payment provided for by this Plan, in the full amount so provided, and does not cure such failure within thirty (30) days of being given

written notice of said failure by a party in interest. A default shall also be deemed to occur if the Debtor materially violates any substantive provision of this Plan.

**Section 8.06 Disbursing Agent.** There shall be no disbursing agent hereunder and the Debtor will make all payments to creditors directly, by check or, where available, direct deposit or auto-debit.

**Section 8.07 Captions.** The headings contained in this Plan are for convenience of reference only, and do not affect the meaning or interpretation of this Plan.

**Section 8.08 Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the District of Columbia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.09 Escheat.** If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. Unclaimed property shall be (i) first paid to other members of the class of the claimant not claiming said distribution, until such time as said class is paid in full; (ii) second paid to each junior class (if any), until all classes are paid in full; and (iii) then, if and when each class is paid in full, remaining funds shall be donated to the University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond, Esq. in the charitable manner she sees most fit. The University of Miami School of Law Bankruptcy Clinic works with members of the South Florida legal community to provide *pro bono* services to persons in need of bankruptcy relief, while also furnishing law students with valuable pedagogical experience in the field of bankruptcy law.

**Section 8.10 Retention of Jurisdiction.** The United States Bankruptcy Court for the District of Columbia shall retain jurisdiction of this chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**Section 8.11 Modifications.** Modification of this Plan shall be governed by Section 1193 of the Bankruptcy Code.

**Section 8.12 Professional Fees.** Per Section 3.02 of this Plan, the Debtor must seek the approval of this Honorable Court prior to paying any professional fees incurred during the pendency of this

case. Commencing on the Effective Date, however, the Debtor shall be free to pay any post-confirmation fees incurred by the Subchapter V trustee, counsel, or other professionals, without first obtaining leave of court, and such professionals shall thereafter be excused from any requirement to seek leave of court.

**Article 9. Discharge**

**Section 9.01 Discharge.** The Court shall grant the Debtor a discharge pursuant to 11 U.S.C. § 1192 of all debts that arose prior to the Petition Date in this case, except any debt (1) on which the last payment is due after the first five (5) years of the Plan; and (2) debts of the kind specified in Section 523(a) of the Bankruptcy Code.

(a) If the Plan is confirmed under 11 U.S.C. § 1191 as a consensual plan, the Debtor shall receive a discharge on the effective date of the Plan; or

(b) If the Plan is confirmed under 11 U.S.C. § 1191(b), the Bankruptcy Court shall grant a discharge upon the completion of the plan payments being made in the 60th month succeeding the Effective Date.

**Section 9.02 Effect of Discharge.** This discharge will be effective against all creditors of the Debtor given notice of this bankruptcy case and sent a copy of this Plan, together with their respective members, managers, insiders, shareholders, officers, directors, trustees and receivers.

**Section 9.03 Notice of Substantial Consummation.** If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2).

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
THE BELMONT FIRM
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
mac@dcbankruptcy.com
*Counsel for the Debtor*